CIV-04-1771-R

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

---

**MARIAN P. OPALA,**

**Plaintiff,**

**vs.**

| | |
|---|---|
| **(1)** | **JOSEPH M. WATT;** |
| **(2)** | **JAMES R. WINCHESTER;** |
| **(3)** | **ROBERT E. LAVENDER;** |
| **(4)** | **RUDOLPH HARGRAVE;** |
| **(5)** | **YVONNE KAUGER;** |
| **(6)** | **JAMES E. EDMONDSON;** |
| **(7)** | **STEVEN W. TAYLOR; and,** |
| **(8)** | **TOM COLBERT,** |

**in their individual and administrative capacities,**

**Defendants.**

---

### BRIEF IN SUPPORT OF MOTION TO DISMISS

---

**s/ NEAL LEADER, OBA #5310**
**SENIOR ASSISTANT ATTORNEY GENERAL**
**112 State Capitol Building**
**Oklahoma City, OK  73105**
**(405) 522-4393 (VOICE);(405) 521-6246 (FAX)**

**s/ STEFAN K. DOUGHTY, OBA #16209**
**ASSISTANT ATTORNEY GENERAL**
**4545 N. Lincoln Boulevard, Suite 260**
**Oklahoma City, OK 73105**
**(405) 521-4274: (405) 528-1867 (FAX)**

**E-mail address for service:  fhc.docket@oag.state.ok.us**
**ATTORNEYS FOR DEFENDANTS**

---

**JANUARY 24, 2005**

## TABLE OF CONTENTS

PAGE

Introduction ...................................................................................................................... 1

**PROPOSITION ONE**

A PLAINTIFF'S MERE ASSERTION OF A CONSTITUTIONAL CLAIM IS NOT ENOUGH TO INVOKE A FEDERAL DISTRICT COURT'S FEDERAL QUESTION JURISDICTION. RATHER, THE PLAINTIFF MUST PRESENT A COLORABLE CLAIM. CLAIMS BASED ON FEDERAL QUESTION JURISDICTION MAY PROPERLY BE DISMISSED FOR WANT OF JURISDICTION WHERE THE ALLEGED CLAIMS ARE WHOLLY INSUBSTANTIAL AND FRIVOLOUS. ........................................ 3

**A.**

When Allegations in a Plaintiff's Complaint Are Contradicted by Documents Made Part of the Complaint—such as the Rules on the Selection of the Chief Justice Made Part of Justice Opala's Complaint—the Documents Control and the Court Need Not Accept as True the Allegations in the Complaint. In the Case Now Before the Court, the Court Rules Contradict the Allegations in Justice Opala's Complaint and Clearly Demonstrate That His Claims Are Wholly Insubstantial and Frivolous. Thus, the Court May Dismiss Justice Opala's Case for Failure to Invoke this Court's Federal Question Jurisdiction by Failing to Present a Substantial Federal Question. ............................................................................................ 3

**B.**

The Allegations upon Which Justice Opala Bases His Federal Claims Are Contradicted by the Rules He Bases His Claims Upon. When Such Contradictions Exist, the Written Documents Control. Thus, the Allegations upon Which Justice Opala's Claims Rely Need Not Be Accepted as True. ....................................... 6

**C.**

Because All of Justice Opala's Claims Are Based on the False Allegations Regarding the Effect of the Rules upon Him, His Claims Are Frivolous, and Thus Do Not Present a Substantial Federal Question.  Justice Opala Has Thus Failed to Invoke the Exercise of this Court's Federal Question Jurisdiction. .......................... 11

**PROPOSITION TWO**

EVEN IF JUSTICE OPALA'S COMPLAINT HAD PROPERLY INVOKED THIS COURT'S FEDERAL QUESTION JURISDICTION, THE CLAIMS AGAINST ALL EIGHT DEFENDANTS, IN BOTH THEIR INDIVIDUAL AND OFFICIAL CAPACITY, ARE BARRED BY ABSOLUTE IMMUNITY.  QUALIFIED IMMUNITY ALSO PROTECTS THE JUSTICES. .......................... 13

**A.**

In Adopting Rules for the Internal Operating Procedures of the Supreme Court Conference, the Justices of the Supreme Court Performed a Legislative Function and Are Thus Protected by Legislative Immunity. .................................. 13

**B.**

The Suit Against the Defendant Oklahoma Supreme Court Justices in Their Official Capacity Is Barred by the Eleventh Amendment to the United States Constitution.  Qualified Immunity Also Protects the Justices. .............................. 16

Eleventh Amendment Immunity ........................................ 16
Qualified Immunity ........................................................ 19

**PROPOSITION THREE**

DEFENDANT OPALA ALSO HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ............................ 21

A.    Plaintiff's "Due Process" Claim. ........................................ 21
B.    Plaintiff's "Equal Protection" Claim. ................................. 22

**CONCLUSION** ................................................................................................................ **23**

**CERTIFICATE OF SERVICE** ..................................................................................... **24**

# TABLE OF AUTHORITIES

## CASES CITED

PAGE

**ANR Pipeline Company v. LaFaver,**
    150 F.3d 1178 (10th Cir. 1998) ........................................................... **19**

**Aitchison v. Raffian,**
    708 F.2d 96 (3rd Cir. 1983) ................................................................. **14**

**Alabama v. Pugh,**
    438 U.S. 781, 98 S. Ct. 3057,
    57 L. Ed. 2d 1114 (1978) ..................................................................... **16**

**Albright v. Rodriguez,**
    51 F.3d 1531, 1535 (10th Cir. 1995) .................................................... **20**

**Bell v. Hood,**
    327 U.S. 678, 66 S. Ct. 773,
    90 L. Ed. 939 (1946) .................................................................... **11, 12**

**Belville v. Curry,**
    39 P.3d 754 (Okla. 2001) ...................................................................... **7**

**Berg v. Parker Drilling Company,**
    98 P.3d 1099 (Okla. 2004) ..................................................................... **7**

**Blanton v. Housing Authority of the City of Norman,**
    1990 OK 38, 794 P.2d 412 ................................................................... **22**

**Board of Regents v. Roth,**
    408 U.S. 564, 92 S. Ct. 2701,
    33 L. Ed. 2d 548 (1972) ................................................................. **21, 22**

**Bogan v. Scott-Harris,**
    523 U.S. 44, 118 S. Ct. 966,
    140 L. Ed. 2d 79 (1998) ...................................................................... **15**

**Cook v. Alexander,**
    405 P.2d 990 (Okla. 1965) ..................................................................... **7**

**Death of May v. Purolator Security Service,**
    586 P.2d 738 (Okla. 1978) ..................................................................... **7**

**Dutsch v. Sea Ray Boats, Inc.,**
    845 P.2d 187 (Okla. 1992) ................................................................. 7

**Farmers Insurance Company, Inc. v. Peterson,**
    81 P.3d 659 (Okla. 2003) ................................................................... 7

**Fayetteville Investors v. Commercial Buildings Incorporated,**
    936 F.2d 1462 (4th Cir. 1991) ........................................................... 5

**Florida Department Of Health & Rehabilitation Services v. Florida Nursing
Home Association,**
    450 U.S. 147, 101 S. Ct. 1032,
    67 L. Ed. 2d 132 (1981) ................................................................... 16

**Forrester v. White,**
    484 U.S. 219, 108 S. Ct. 538,
    98 L. Ed. 2d 555 (1988) ................................................................... 15

**GMC Oil & Gas Co. v. Texas Oil & Gas Corp.,**
    586 P.2d 731 (Okla. 1978) ................................................................. 7

**Gallas v. Supreme Court of Pennsylvania,**
    211 F.3d 760 (3rd Cir. 2000) ........................................................... 15

**Georgia-Pacific Corporation v. Lumber Products Company,**
    590 P.2d 661 (Okla. 1979) ................................................................. 7

**Goldsby v. Juricek,**
    403 P.2d 454 (Okla. 1965) ................................................................. 7

**Gonzales v. City of Castle Rock,**
    366 F.3d 1093 (10th Cir. 2004) ....................................................... 21

**Gorton v. Mashburn,**
    995 P.2d 1114 (Okla. 1999) ............................................................... 7

**Gregory v. Ashcroft,**
    501 U.S. 452, 111 S. Ct. 2395,
    115 L. Ed. 2d 410 (1991) ........................................................... 20, 21

**Groseclose v. City of Tulsa,**
    990 P.2d 828 (Okla. 1998) ................................................................. 7

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S. Ct. 2727,
    73 L. Ed. 2d 396 (1982) ......................................................................... 19

Head v. McCracken,
    2004 OK 84, ____ P.3d ____ ................................................................ 7

Heat Transfer & Equipment v. Cauthon,
    100 P.3d 722 (Okla. 2004) ..................................................................... 7

Keller v. Crase,
    768 P.2d 905 (Okla. 1989) ..................................................................... 7

Kentucky v. Graham,
    473 U.S. 159, 105 S. Ct. 3099,
    87 L. Ed. 2d 114 (1985) ......................................................................... 16

Kimel v. Florida Board of Regents,
    528 U.S. 62, 120 S.Ct. 631,
    145 L.Ed.2d 522 (2002) ................................................................... 20, 22

Ladd Petroleum Corporation v. Oklahoma Tax Commission,
    619 P.2d 602 (Okla. 1980) ..................................................................... 7

Lehnhausen v. Lake Shore Automobile Parts Co.,
    410 U.S. 356,,93 S. Ct. 1001,
    35 L. Ed. 2d 351 (1973) ......................................................................... 23

Lindsey v. Kingfisher Bank & Trust Company,
    832 P.2d 1 (Okla. 1992) .......................................................................... 7

Mainelli v. Providence Journal Company,
    312 F.2d 3 (1st Cir. 1962) ....................................................................... 12

Massengale v. Board,
    29 P.3d 558 (2001) ................................................................................ 7

Matusovsky v. Merrill Lynch,
    186 F. Supp. 2d 397 (S.D. N.Y. 2002) .................................................. 6

Minie v. Hudson,
    934 P.2d 1082 (Okla. 1997) ................................................................... 7

Morris v. Sorrells,
    837 P.2d 913 (Okla. 1992) ..................................................................... 7

**North Dakota v. U.S.,**
 495 U.S. 423, 110 S. Ct. 1986 ............................................................. 22

**Northlake Community Hospital v. The United States,**
 654 F.2d 1234 (7th Cir. 1981) ............................................................. 11

**Norton v. Hughes,**
 5 P.3d 588 (Okla. 2000) ....................................................................... 7

**Olpin v. Ideal National Insurance Company,**
 419 F.2d 1250 (10th Cir. 1969) ........................................................... 5

**Ott v. Home Savings and Loan Association,**
 265 F.2d 643 (9th Cir. 1958) ............................................................... 5

**Papasan v. Allian,**
 478 U.S. 265, 106 S. Ct. 2932,
 92 L. Ed. 2d 209 (1986) ................................................................. 17, 18

**Pepsico, Inc. v. Choate,**
 802 P.2d 29 (Okla. 1990) ..................................................................... 7

**Putnam v. Saied,**
 587 P.2d 1371 (Okla. 1978) ................................................................. 7

**Reinstatement of Cross,**
 51 P.3d 1201 (Okla. 2002) ................................................................... 7

**Sazerac Company, Inc. v. Falk,**
 861 F. Supp. 253 (S.D. N.Y. 1994) ..................................................... 4

**Scott v. Performance Contractors, Inc.,**
 166 F.R.D. 372 (M.D. La. 1996) ......................................................... 6

**Sears, Roebuck & Company v. Armstrong,**
 585 P.2d 349 (Okla. 1978) ................................................................... 7

**Sergeant v. Central National Bank & Trust Co. of Enid,**
 809 P.2d 1298 (Okla. 1991) ................................................................. 7

**Smith v. State ex rel. Department of Public Service,**
 680 P.2d 365 (Okla. 1984) ................................................................... 7

**State Board of Examiners of Certified Shorthand Reporters v. Thompson,**
    \_\_\_\_ P.3d \_\_\_\_ (Okla. 2004) W.L. 2924307 ...................................................... 7

**Teeter v. City of Edmond,**
    85 P.3d 817 (Okla. 2004) ...................................................................................... 7

**Thompson v. Anchor Glass,**
    73 P.3d 835 (Okla. 2003) ...................................................................................... 7

**United States v. Carolene Products Co.,**
    304 U.S. 144, 58 S. Ct. 778,
    82 L. Ed. 1234 (1938) ......................................................................................... 22

**Vance v. Bradley,**
    440 U.S. 93, 99 S. Ct. 939,
    59 L. Ed. 2d 171 (1979) ...................................................................................... 23

**Washington Legal Foundation v. Texas Equal Access to Justice Foundation,**
    86 F. Supp. 2d 617 (W.D. Tex. 2000) ................................................................ 14

**Williams v. State,**
    678 P.2d 259 (Okla. 1984) .................................................................................... 7

**Ex Parte Young,**
    209 U.S. 123, 28 S. Ct. 441,
    52 L. Ed. 2d 714 (1908) ........................................................................... 17, 18, 19

**Zeligson v. Hartman-Blair,**
    126 F.2d 595 (10th Cir. 1942) .............................................................................. 5

## OTHER AUTHORITIES

**Article VII, § 1 of the Oklahoma Constitution** ........................................................ 13

**Article VII, § 2 of the Oklahoma Constitution** ........................................................ 13

**Article VII, § 4 of the Oklahoma Constitution** ........................................................ 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)    MARIAN P. OPALA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-04-1771-R |
| | ) | |
| (1)    JOSEPH M. WATT; | ) | |
| (2)    JAMES R. WINCHESTER; | ) | |
| (3)    ROBERT E. LAVENDER; | ) | |
| (4)    RUDOLPH HARGRAVE; | ) | |
| (5)    YVONNE KAUGER; | ) | |
| (6)    JAMES E. EDMONDSON; | ) | |
| (7)    STEVEN W. TAYLOR; and, | ) | |
| (8)    TOM COLBERT, in their | ) | |
| individual and administrative capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### Introduction

After a courtroom spat between lawyers in the film *Anatomy of a Murder*, the judge—played by Joseph Welch, noted for his exchange with Senator Joseph McCarthy—looked down at one of the lawyers and said, "Well, there is no reason to make a federal case out of it." Not only is it inappropriate to make a "federal case" out of everything, it is impossible to make a "federal case" out of everything. Not every loss, every disappointment, every perceived injury can be made into a "federal case."

Here, Justice Marian Opala does not have a "federal case" against his colleagues on the Oklahoma Supreme Court. The attacks in this brief are not attacks on Justice Opala; rather they are attacks on the federal case his lawyers have concocted.

Justice Opala alleges claims against his colleagues for their failure to elect him Chief Justice and for amending Rule 4 of the Internal Operating Procedures of the Supreme Court Conference, which establishes the procedures for selection of the Court's Chief Justice.

The language of Rule 4, both before and after the challenged amendments, is set forth in full in Justice Opala's Complaint. The language of those rules demonstrates that Justice Opala's allegations are false, insubstantial and frivolous. Thus, Justice Opala has failed to invoke the federal question jurisdiction of this Court.

As will be demonstrated below, **Justices Lavender, Hargrave, Kauger and Opala were all equally eligible to be nominated and elected under the prior version of Rule 4.** Contrary to Justice Opala's allegation, he was not the only eligible Justice, nor did he have any priority among the four eligible Justices. Under the **amended Rule, those same four Justices and Justice Watt were all equally eligible to be nominated and elected Chief Justice at the November 2004 election**—there was no priority given to Justice Watt in that election. Justice Opala simply did not win the election.

Further, Justice Opala brought his claims against Defendants who are immune from suit—immune because of legislative immunity, Eleventh Amendment immunity and qualified immunity. Finally, Justice Opala has failed to state a claim upon which relief can be granted. In short, Justice Opala has no federal claim, and his "federal case" should be dismissed.

## PROPOSITION ONE

**A PLAINTIFF'S MERE ASSERTION OF A CONSTITUTIONAL CLAIM IS NOT ENOUGH TO INVOKE A FEDERAL DISTRICT COURT'S FEDERAL QUESTION JURISDICTION. RATHER, THE PLAINTIFF MUST PRESENT A COLORABLE CLAIM. CLAIMS BASED ON FEDERAL QUESTION JURISDICTION MAY PROPERLY BE DISMISSED FOR WANT OF JURISDICTION WHERE THE ALLEGED CLAIMS ARE WHOLLY INSUBSTANTIAL AND FRIVOLOUS.**

### A.

**When Allegations in a Plaintiff's Complaint Are Contradicted by Documents Made Part of the Complaint—such as the Rules on the Selection of the Chief Justice Made Part of Justice Opala's Complaint—the Documents Control and the Court Need Not Accept as True the Allegations in the Complaint. In the Case Now Before the Court, the Court Rules Contradict the Allegations in Justice Opala's Complaint and Clearly Demonstrate That His Claims Are Wholly Insubstantial and Frivolous. Thus, the Court May Dismiss Justice Opala's Case for Failure to Invoke this Court's Federal Question Jurisdiction by Failing to Present a Substantial Federal Question.**

The entirety of Justice Opala's claims that his colleagues on the Court have violated his federal equal protection and due process rights is based upon his colleagues' enactment of amendments of Rule 4 of the Internal Operating Procedures of the Supreme Court Conference.[1] He alleges that prior to the Rule's amendment, he was the only Justice eligible to be nominated for the office of Chief Justice and had a top eligibility spot to be nominated to that office (Complaint, ¶ 16). He further alleges that the old Rule thus created a property right—a reasonable expectation that he would be nominated and elected Chief Justice (Complaint, ¶ 29),

---

[1]Because those Rules are not published by West Publishing Company, a full set of the Rules is attached, as Appendix 1, for the Court's convenience.

and that as a direct result of the Rule change he was deprived of that significant property right and liberty interest without due process. (Complaint, ¶¶ 33, 36). Justice Opala also alleges that the amendment to the Rule denied him the opportunity to be nominated and elected (Complaint, ¶ 27), that he was barred from eligibility to be nominated for the position of Chief Justice (Complaint, ¶ 36), and that the amendment gave Justice Watt the top eligibility priority for the Chief Justice position (Complaint, ¶ 23).

All of these allegations are false. The falseness of these allegations is demonstrated by the language of Rule 4, as it existed both before and after the amendment. Both versions of the Rule are set forth in full in Justice Opala's Complaint. The Rule prior to amendment is set forth in paragraph 14 of the Complaint, and the Rule after amendment is set forth in paragraph 26.

When allegations in a Complaint are contradicted by documents made part of the Complaint, the rule of law is that the documents control and accordingly, the Court need not accept the contradicted allegations as true. This rule was applied in *Sazerac Company, Inc. v. Falk*, 861 F.Supp. 253 (S.D. N.Y. 1994). First, the Court held that in ruling on a motion to dismiss the court may consider documents where the claim is based on a written instrument—such as Justice Opala's claims based upon Rule 4—even if the instruments are not attached to the Complaint. The Court then concluded that such documents are controlling:

> If the **allegations of a complaint** are **contradicted by documents made a part thereof,** the **document controls** and the court need **not accept as true the allegations of the complaint.** See *Feick v. Fleener,* 653 F.2d 69, 75 & n. 4 (2d Cir.1981); *United States ex rel. Sommer v. Dixon,* 524 F.Supp. 83, 85 (N.D.N.Y.1981), *aff'd per curiam,* 709 F.2d 173 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983).

861 F.Supp. 253, at 257 (emphasis added).

4

The United States Court of Appeals for the Tenth Circuit has long recognized this rule in addressing motions to dismiss.  In *Olpin v. Ideal National Insurance Company*, 419 F.2d 1250, 1255 (10th Cir. 1969), the Court of Appeals held that while it is the duty of both the trial court and the Court of Appeals to liberally construe and accept as true the allegations of fact in a complaint, "**neither** the **trial court nor this court is bound to accept mere legal conclusions or factual claims at variance with the express terms of the Bonus Fund Endorsement, itself, which is attached to the complaint as an exhibit and by reference made a part thereof.**" 419 F.2d at 1255 (emphasis added).

To the same effect, the Court of Appeals for the Tenth Circuit in *Zeligson v. Hartman-Blair*, 126 F.2d 595, 596 (10th Cir. 1942) held that a motion to dismiss admits all facts well pled, but does **not** admit the legal effect ascribed by the pleader to a writing attached to the Complaint:

> The motion to dismiss admitted all facts well pleaded, but it did **not admit the legal effect ascribed by the pleader to the writing.**  The writing was attached to the first amended complaint as an exhibit and **its legal effect is to be determined by its terms rather than by the allegations of the pleader.**

126 F.2d at 596 (emphasis added).

Other circuit courts have come to like conclusions.  *Fayetteville Investors v. Commercial Buildings Incorporated*, 936 F.2d 1462, 1465 (4th Cir. 1991).  ("Indeed, in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed.R.Civ.P., the exhibit prevails"); *Ott v. Home Savings and Loan Association*, 265 F.2d 643, 649, fn. 1 (9th Cir. 1958) ("where the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom.")

Federal district courts also apply this rule in addressing motions to dismiss. *Matusovsky v. Merrill Lynch*, 186 F.Supp.2d 397, 400 (S.D. N.Y. 2002) ("a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading. [citations omitted.]  If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss.") and *Scott v. Performance Contractors, Inc.*, 166 F.R.D. 372, 374 (M.D. La. 1996) ("All exhibits attached to a complaint, however, are part of the pleadings under Rule 10(c).  Well-pleaded factual allegations should be taken as true, but 'conclusory allegations and unwarranted deductions of fact' should not.  Furthermore, when conclusions of fact made in the complaint are contradicted by an attached exhibit, the appended document controls and dismissal is appropriate").

As demonstrated in the next subproposition, Justice Opala's allegations with respect to the meaning and effect of Rule 4, both before and after its amendment, are contradicted by both the amended Rule and the Rule prior to its amendment.

## B.

### The Allegations upon Which Justice Opala Bases His Federal Claims Are Contradicted by the Rules He Bases His Claims Upon.  When Such Contradictions Exist, the Written Documents Control.  Thus, the Allegations upon Which Justice Opala's Claims Rely Need Not Be Accepted as True.

As noted above, the entirety of Justice Opala's claims is based on two written instruments—the provisions of Rule 4 of the Supreme Court Conferences Internal Procedures—as they existed before and after the November 2004 amendments to the Rule. Because those written instruments were made part of the Complaint, the documents not only may be considered by the Court in ruling on the Motion to Dismiss—they control.

To understand how Rule 4 applied to the selection of Chief Justice both before and after its November 2004 amendment, it is necessary for the Court to know when each of the nine current members of the Oklahoma Supreme Court were first appointed to the Court, and if and when each of the Justices served as Chief Justice. Mere reference to Oklahoma case law provides this information.[2] The case law cited in footnote 2, shows when each Justice was appointed to the Court and when Justices, who have served as Chief Justice, served in that position. Those cases demonstrate the following:

---

[2]The first case cited after each Justice's name is a case decided just prior to the Justice's appointment; the second case is a case written or participated in by the Justice shortly after being appointed. In the case of Justices who have served as Chief Justice, a case is also cited from each year in which the Justice served in that capacity or in Justice Winchester's case, to show he had not served as Vice-Chief Justice. **Justice Lavender**: *Goldsby v. Juricek*, 403 P.2d 454 (Okla. 1965), *Cook v. Alexander*, 405 P.2d 990 (Okla. 1965), *Georgia-Pacific Corporation v. Lumber Products Company*, 590 P.2d 661 (Okla. 1979), and *Ladd Petroleum Corporation v. Oklahoma Tax Commission*, 619 P.2d 602 (Okla. 1980). **Justice Hargrave**: *Sears, Roebuck & Company v. Armstrong*, 585 P.2d 349 (Okla. 1978), *Death of May v. Purolator Security Service*, 586 P.2d 738 (Okla. 1978), *Keller v. Crase*, 768 P.2d 905 (Okla. 1989), *Pepsico, Inc. v. Choate*, 802 P.2d 29 (Okla. 1990), *Belville v. Curry*, 39 P.3d 754 (Okla. 2001), and *Reinstatement of Cross*, 51 P.3d 1201 (Okla. 2002). **Justice Opala**: *GMC Oil & Gas Co. v. Texas Oil & Gas Corp.*, 586 P.2d 731 (Okla. 1978), *Putnam v. Saied*, 587 P.2d 1371 (Okla. 1978), *Sergeant v. Central Nat. Bank & Trust Co. of Enid*, 809 P.2d 1298 (Okla. 1991), and *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187 (Okla. 1992). **Justice Kauger**: *Williams v. State*, 678 P.2d 259 (Okla. 1984), *Smith v. State ex rel. Dept. of Public Service*, 680 P.2d 365 (Okla. 1984), *Minie v. Hudson*, 934 P.2d 1082 (Okla. 1997), and *Groseclose v. City of Tulsa*, 990 P.2d 828 (Okla. 1998). **Justice Watt**: *Lindsey v. Kingfisher Bank & Trust Company*, 832 P.2d 1 (Okla. 1992), *Morris v. Sorrells*, 837 P.2d 913 (Okla. 1992), *Thompson v. Anchor Glass*, 73 P.3d 835 (Okla. 2003), and *State Board of Examiners of Certified Shorthand Reporters v. Thompson*, ____ P.3d ____ (Okla. 2004), W.L. 2924307. **Justice Winchester**: *Gorton v. Mashburn*, 995 P.2d 1114 (Okla. 1999), *Norton v. Hughes*, 5 P.3d 588 (Okla. 2000), *Massengale v. Board*, 29 P.3d 558 (2001), and *In Re Initiative Petition NO. 366*, 46 P.3d 126 (2002). **Justice Edmondson**: *Farmers Insurance Company, Inc. v. Peterson*, 81 P.3d 659 (Okla. 2003), and *Teeter v. City of Edmond*, 85 P.3d 817 (Okla. 2004). **Justice Taylor**: *Berg v. Parker Drilling Company*, 98 P.3d 1099 (Okla. 2004), and *Heat Transfer & Equipment v. Cauthon*, 100 P.3d 722 (Okla. 2004). **Justice Colbert**: *Berg v. Parker Drilling Company*, 98 P.3d 1099 (Okla. 2004), and *Head v. McCracken*, 2004 OK 84, ____ P.3d ____.

| JUSTICES | YEAR APPOINTED TO COURT | YEARS SERVED AS CHIEF JUSTICE |
|---|---|---|
| Justice Lavender | 1965 | 1979-1980 |
| Justice Hargrave | 1978 (October) | 1989-1990 and 2001-2002 |
| Justice Opala | 1978 (November) | 1991-1992 |
| Justice Kauger | 1984 | 1997-1998 |
| Justice Watt | 1992 | 2003-2004 |
| Justice Winchester | 2000 | |
| Justice Edmondson | 2003 | |
| Justice Taylor | 2004 | |
| Justice Colbert | 2004 | |

With this information about the Justices' tenure on the Court and service as Chief Justice, Rule 4 and its application can be fully understood.

Prior to its amendment on November 4, 2004, Rule 4 of the Internal Operating Procedures of the Supreme Court Conference, set forth in paragraph 14 of Justice Opala's Complaint, provided:

> The term of office of Chief Justice shall rotate among eligible members of the Court every two years. A Justice **is eligible to become Chief Justice when each sitting Justice at the time of the Justice's appointment has completed a term as Chief Justice** or waived his or her right to do so. No Justice shall succeed himself or herself as Chief Justice, **nor shall a Justice be eligible hereunder until he or she has completed six years service as Justice of this Court.**
>
> Nominations shall be made for the offices of Chief Justice and Vice Chief Justice at the first conference in November following the general election. Voting shall be by written ballot. The term

of office shall commence in January of the year immediately following the election and continue until the completion of the two year term of office.

Complaint, ¶ 14 (emphasis added).

As can be seen from the Rule prior to its amendment, a Justice is eligible to serve as Chief Justice, when the Justice has completed six years service and "when each sitting Justice **at the time of the Justice's appointment** has completed **a term as Chief Justice**."

Under the Rule, no eligible Justice—contrary to Justice Opala's allegation—is given a priority. All eligible Justices are equally eligible. Under the old Rule 4, four Justices—not only Justice Opala, as claimed—were eligible at the November 2004 election to be nominated and elected Chief Justice. Under the old Rule 4, Justices Kauger, Opala, Hargrave and Lavender were all eligible—equally eligible—to be nominated and elected because each had served at least six years and because each of the Justices sitting on the Court when those four Justices were appointed, as demonstrated by the chart above, had completed "a term as Chief Justice." We thus see, that contrary to Justice Opala's allegations, at the November 2004 election, he was not the only Justice eligible to be nominated under the Rule prior to amendment, nor did he have any priority in eligibility.

Again, contrary to Justice Opala's allegations, the Rule did not create a reasonable expectation that he would be nominated and elected Chief Justice. Rather, the Rule simply made him, along with three other Justices, equally eligible for nomination and election. The language of the very Rule Justice Opala relies upon demonstrates the falseness of this allegation.

Similarly, the language in the Rule after the amendment demonstrates the falseness of Justice Opala's other allegations. The Rule after its amendment, which is set forth in paragraph 26 of Justice Opala's Complaint, reads as follows:

> The term of office of Chief Justice shall rotate among eligible members of the Court every two years. The **next senior Justice who has never served** as Chief Justice should be considered for election as Chief Justice, **provided that the Justice has served at least four (4) years on this Court including service as Vice-Chief Justice. If the next senior Justice has not served at least four (4) years on the Court including service as Vice-Chief Justice, the incumbent Chief Justice or any other Justice who has served as Chief Justice may be elected to another two-year term as Chief Justice.** Otherwise, the Chief Justice will serve only one term.

Complaint, ¶ 26 (emphasis added).

As the chart on page 8 demonstrates, at the time of the most recent election for Chief Justice—November 2004—none of the next senior Justices who had never served as Chief Justice were eligible for nomination or election, as none of those Justices—Justices Winchester, Edmondson, Taylor or Colbert—had "served at least four (4) years including service as Vice-Chief Justice"[3] on the Court. Thus, **at the November 2004 election, all five Justices who had served as Chief Justice before—including Justice Opala—were equally eligible to be nominated and elected** for another two-year term as Chief Justice. Thus, **under the new Rule, five Justices were equally eligible to be nominated and elected Chief Justice. The Justices eligible to be nominated or elected in the November 2004 election were Justices Lavender, Hargrave, Opala, Kauger and Watt.** All were equally eligible to be nominated or elected. No preference or priority was given to Justice Watt. Rather, the effect of the new Rule was to remove the provision that would have made him ineligible to succeed himself. Justice Opala's

---

[3]The cases cited in footnote 2 demonstrate that although Justice Winchester was on the Court for four years, he had not served as Vice-Chief Justice.

eligibility was unchanged.  At the November 2004 election, he was eligible to be nominated and elected under both the old and new Rule.  He was given no priority under the old or new Rule.

The language of the Rules themselves—which controls when contrary to the allegations in his Complaint—demonstrates that Justice Opala's allegations that the new Rule gave Justice Watt preference and reduced Justice Opala's eligibility at the November 2004 election are simply false.  These allegations and others contradicted by the Rule thus need not be considered as true when ruling on a Motion to Dismiss.

### C.

**Because All of Justice Opala's Claims Are Based on the False Allegations Regarding the Effect of the Rules upon Him, His Claims Are Frivolous, and Thus Do Not Present a Substantial Federal Question.  Justice Opala Has Thus Failed to Invoke the Exercise of this Court's Federal Question Jurisdiction.**

In order to properly invoke the federal question jurisdiction of this Court, Plaintiff Opala must present a colorable constitutional claim.  As the Court of Appeals for the Seventh Circuit held in *Northlake Community Hospital v. The United States*, 654 F.2d 1234, 1241 (7th Cir. 1981), in examining allegations in a complaint, mere assertions are not sufficient; rather, a colorable claim must appear: "The mere assertion of a constitutional claim is not enough; the record before the Court must present a colorable constitutional claim."

In the case at hand, the mere assertions of age discrimination, equal protection, and due process claims are not sufficient—as they are contradicted by the very documents relied upon in making the claims—and thus need not be considered as true in ruling on a motion to dismiss.

When a complaint is attacked by a motion to dismiss for failure to invoke federal question jurisdiction, a court may properly dismiss the complaint when it is wholly insubstantial and frivolous.  This principle was recognized by the United States Supreme Court in *Bell v.*

*Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).  In discussing the exceptions to the general principle that federal question jurisdiction may not generally be defeated on the basis of failure to state a claim, the Supreme Court stated:

> The previously carved out exceptions are that **a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes** clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction **or where such a claim is wholly insubstantial and frivolous**.

327 U.S. at 682-83 (emphasis added)

The Court of Appeals for the First Circuit used this same rule in affirming the dismissal of a claim in *Mainelli v. Providence Journal Company*, 312 F.2d  3, 5-6 (1st Cir. 1962).  The court further held the proper procedure "is to dismiss for lack of jurisdiction without reaching the question whether the complaint states a claim upon which relief can be granted."  *Id.*

In the case at hand, the documents relied upon by Justice Opala in making his claims, the provisions of Rule 4 prior to and after the Court's November 2004 amendment, contradict his allegations, and in such a situation, as noted above, the documents control.  Here, the controlling documents make it clear that Justice Opala's due process, equal protection and age discrimination claims are all based on false allegations which the Court need not accept as true because the controlling documents contradict them.  In short, the allegations of Constitutional and statutory violations by Justice Opala are wholly insubstantial and frivolous.  Under the teachings of the United States Supreme Court, Justice Opala's claims can and should be dismissed for failure to invoke the federal question jurisdiction of this Court.

## PROPOSITION TWO

**EVEN IF JUSTICE OPALA'S COMPLAINT HAD PROPERLY INVOKED THIS COURT'S FEDERAL QUESTION JURISDICTION, THE CLAIMS AGAINST ALL EIGHT DEFENDANTS, IN BOTH THEIR INDIVIDUAL AND OFFICIAL CAPACITY, ARE BARRED BY ABSOLUTE IMMUNITY. QUALIFIED IMMUNITY ALSO PROTECTS THE JUSTICES.**

### A.

**In Adopting Rules for the Internal Operating Procedures of the Supreme Court Conference, the Justices of the Supreme Court Performed a Legislative Function and Are Thus Protected by Legislative Immunity.**

The Oklahoma Constitution at Article VII, Section 1 vests "the judicial power of this State," in, and among other entities, the "Supreme Court." Further, Article VII, § 4 provides that "the appellate jurisdiction of the Supreme Court shall be co-extensive with the State and shall extend to all cases at law and in equity." The Justices of the Supreme Court are required by Article VII, § 2 of the State Constitution to "choose from among their members a Chief Justice and a Vice Chief Justice."

In furtherance of the powers vested in the Supreme Court by the Oklahoma Constitution, the Court has adopted rules for the Internal Operating Procedures of the Supreme Court Conference. Those Rules provide when conference will be held, when various matters are considered by Conference, the duties of the Chief Justice at Conference, how opinions are assigned, how a Chief Justice is chosen, how and when draft opinions are submitted to Conference, and various other matters relating to the Conference's consideration of the cases brought before it. In adopting and amending such Rules, the members of the Court act in a legislative capacity.

The United States Supreme Court has held that when judges exercise a legislative function, such as the adoption of rules, they are protected by legislative immunity. *Supreme Court of Virginia v. Consumers Union of United States*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). In discussing the purpose and function of legislative immunity in that case, the United States Supreme Court held:

> The **purpose of this immunity is to insure that the legislative function may be performed independently without fear of outside interference.** *Ibid.* To preserve legislative independence, we have concluded that 'legislators engaged in the sphere of legitimate legislative activity' *Tenney v. Brandhove* [341 U.S. 367, 376, l71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951)], should be **protected not only from the consequences of litigation's results but also from the burden of defending themselves."** *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967).

446 U.S. at 731-32, 100 S.Ct. At 1974 (emphasis added).

After concluding that the Virginia Court, in adopting rules regulating the Bar, was performing a legislative function, the Supreme Court concluded that "the **Virginia Court** and **its members** are **immune from suit** when acting in their legislative capacity."    446 U.S. at 734 (emphasis added).

The notion that non-legislators performing legislative functions may claim legislative immunity is well recognized. In *Aitchison v. Raffian*, 708 F.2d 96, 99-100 (3rd Cir. 1983), the Court of Appeals held that a mayor and a borough attorney were entitled to legislative immunity with respect to their involvement in the passage of an ordinance eliminating plaintiff's job position. In *Washington Legal Foundation v. Texas Equal Access to Justice Foundation*, 86 F.Supp.2d 617 (W.D. Tex. 2000), the district court held that the Texas Supreme Court and its Justices were entitled to absolute legislative immunity when they were performing a legislative

function—adopting disciplinary rules requiring attorneys to participate in Texas's Interest on Lawyers' Trust Account Program.   The issue of the Justices' immunity was not an issue in subsequent appeals, at 94 F.3d 998 (5th Cir. 1997) and 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998).  *See also*, *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760 (3rd Cir. 2000), in which the court held that the Justices of the Pennsylvania Supreme Court were entitled to absolute legislative immunity from claims arising out of their Order reorganizing the First Judicial District.

The policy decision made by the Oklahoma Supreme Court Justices in amending Rule 4 deals with eligibility to be nominated and elected Supreme Court Justice.   The function performed by the Justices was not like the state court judge's decision to demote and terminate a probation officer, considered by the United States Supreme Court in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), which the Court held was an administrative action. Rather, the action of the Oklahoma Supreme Court Justices in amending Rule 4 dealing with the eligibility to be elected Chief Justice, was a legislative act like that considered by the Supreme Court in *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).  In *Bogan*, the Court held that the actions of a mayor in proposing an ordinance which involved the termination of plaintiff's position was protected by absolute legislative immunity.  In speaking of the ordinance, the Court said it "involved the termination of a position, which, **unlike the hiring or firing of a particular employee,** may have prospective **implications** that **reach well beyond the particular occupant of the office."**  523 U.S. at 56, 118 S.Ct. at 973 (emphasis added).  In like fashion, the challenged amendment to Rule 4 does not involve the hiring or firing of a particular employee and the Rule has implications that reach well beyond the present occupants of positions on the Court.

In sum, the action of the Oklahoma Supreme Court Justices in amending Rule 4 was a legislative action.    Accordingly, the Justices enjoy the protection of absolute legislative immunity, which is not just immunity from the results of litigation, but is immunity from suit.

**B.**

**The Suit Against the Defendant Oklahoma Supreme Court Justices in Their Official Capacity Is Barred by the Eleventh Amendment to the United States Constitution.    Qualified Immunity Also Protects the Justices.**

*Eleventh Amendment Immunity.*

By virtue of the Eleventh Amendment to the United States Constitution, states are immune from suit brought by a private citizen, and as the United States Supreme Court held in *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), a suit against a person in his or her official capacity is, in fact, a suit against the governmental entity itself.    Here, the Defendant Justices are sued in both their individual and official capacity—the Complaint indicating that they are sued both individually and in their administrative capacity.    While as demonstrated above, the Justices were not acting in an administrative capacity, but rather a legislative capacity, the attempt here is nevertheless to sue the Justices in their official capacity.    Thus, the suit is one against the State of Oklahoma.    By now it is axiomatic that states and their agencies are entitled to immunity from suit under the Eleventh Amendment, even suits brought for violation of civil rights.    *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Florida Dept. Of Health & Rehabilitation Services v. Florida Nursing Home Association*, 450 U.S. 147, 149-150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981).    The Eleventh Amendment additionally bars suit regardless of whether legal

or equitable remedies are sought. *Papasan v. Allian*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986).

The "Ex parte Young" exception to Eleventh Amendment immunity does not abrogate the Defendant Justices' immunity here. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908), established a limited exception to Eleventh Amendment immunity. *Ex Parte Young* involved a Minnesota state law establishing the maximum passenger rate to be charged by railroads in Minnesota and which provided specific criminal penalties, which the Attorney General of Minnesota actively enforced. The plaintiffs challenged the constitutionality of the law and sought to enjoin the Attorney General from enforcing the law. An injunction was granted against Attorney General Young. When he was held in contempt for disobeying the injunction, he sought a writ of *habeas corpus* to secure his release from custody. The Supreme Court in *Ex Parte Young* recognized that the case before it not only involved an alleged unconstitutional act of the State Legislature, but it also involved action by the Attorney General of the State to enforce the act:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

204 U.S. at 157, 28 S.Ct. at 453.

The "legal fiction" of *Ex Parte Young* is that an unconstitutional act is void, and therefore a state official's enforcement of an unconstitutional act is not authorized by the enactment, and thus the action can not be said to be taken in an official capacity. 204 U.S. at 159, 28 S.Ct. at

454.  Based on this "legal fiction" the Court held that suit against the Minnesota Attorney General for injunctive relief was not barred by Eleventh Amendment immunity.

The "legal fiction" upon which *Ex Parte Young* is based is not present here for two reasons: first, because there is no claim that the Justices were acting under an unconstitutional statute when they amended their court rule, and second, because no prospective injunctive relief is sought.   In the instant case, we have only a claim that the amended Rule enacted by the Justices of the Oklahoma Supreme Court is unconstitutional.   No injunctive relief is sought, though as discussed below, what Plaintiff Opala seeks is in fact retroactive relief—relief not available under the *Ex Parte Young* exception to the Eleventh Amendment.

As the United States Supreme Court held in *Papasan v. Allian*, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), the *Ex Parte Young* doctrine applies "only where the underlying authorization upon which the named official acts is asserted to be illegal."  478 U.S. at 277, 106 S.Ct. at 2940.  Here, there is no challenge to the underlying power of the Court to adopt rules. The claim here is that the resulting Rule is unconstitutional.  Thus, the *Ex Parte Young* doctrine does not apply.

Further, the *Ex Parte Young* exception to the State's Eleventh Amendment immunity is not applicable where the action sought to be enjoined requires the exercise of discretion.  In developing the doctrine in *Ex Parte Young*, the Supreme Court held that under the doctrine, the Court could not control an official's exercise of discretion, only non-discretionary acts: "[t]here is no doubt that the court cannot control the exercise of the discretion of an officer.  It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action."  *Id.*, 209 at 158, 28 S.Ct. at 453.

18

Here, the Oklahoma Supreme Court Justices were engaged in the height of discretionary acts—the drafting and adoption of "legislation" involving how the Court selected its Chief Justice. Like the House of Representatives choosing the Speaker of the House, the Court when electing a Chief Justice is not hiring an employee but rather is choosing a leader from among its membership. Such discretion—the enactment of public policy and the casting of votes—is not controllable under the *Ex Parte Young* doctrine. Officials performing such discretionary acts are protected by Eleventh Amendment immunity.

Additionally, the *Ex Parte Young* exception to the State's Eleventh Amendment immunity is not applicable here because the relief sought is retroactive relief, and suits seeking retroactive relief are deemed to be suits against the State. *ANR Pipeline Company v. LaFaver*, 150 F.3d 1178, 1188 (10th Cir. 1998). ("Suits that seek retroactive relief are deemed to be suits against the state.") In his prayer for relief, Justice Opala asks for retroactive relief. He prays that "the amendment of Rule 4 be declared null and void, of no effect, and unauthorized by law." (Complaint's prayer (5).) This relief would retroactively undo the November 2004 election of Justice Watt, because he was made eligible by the amended Rule. As a suit seeking retroactive relies against the State, Justice Opala's suit is one against the State—a suit which is barred.

Because the *Ex Parte Young* exception to the State's Eleventh Amendment immunity is not applicable here, and as the suit against the Defendant Justices in their official capacity is a suit against the State, the claims against the Justices in their official capacity are barred by the State's Eleventh Amendment immunity.

### *Qualified Immunity.*

The Justices are also protected by qualified immunity, which shields public officials from suit unless they have knowingly violated a clearly established federal right. *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  For the law to be clearly established for qualified immunity purposes, there ordinarily must be a United States Supreme Court or Tenth Circuit Court of Appeals case on point, or a clearly established weight of authority from other courts.  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).  Here there was no knowing violation of clearly established federal rights.  First, as to due process, as shown above, Rule 4 did not create a property right in Justice Opala's election as Chief Justice.  At the November 2004 election he was simply one of many equally eligible Justices under both the old and new Rule.  Second, there is no clearly established statutory or constitutional right that prohibited the Justices from amending their Rule at any time.  Third, as to equal protection, Justice Opala was eligible to be elected in November under both the old and new Rule and was as eligible as any of the eligible Justices under either Rule.  Fourth, as to age discrimination, in *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), the Supreme Court held that the Federal Age Discrimination in Employment Act (ADEA) was not applicable to appointed state judges.  Fifth, in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 91, 120 S.Ct. 631, 650, 145 L.Ed.2d 522 (2002), the Supreme Court held that the ADEA did not authorize individuals to sue the State.  Sixth, nothing in the amended Rule bases eligibility on age.  Seventh, even if age were a significant factor in amending the Rule, such consideration would not violate a clearly established federal right, for the *Gregory* Court also upheld an age classification of state judges that required mandatory retirement at age 70.  The law was challenged on equal protection grounds, and in upholding the law the Court applied a rational basis standard, holding that the people "rationally could conclude that the threat of deterioration at age 70 is sufficiently great ... that they will require all judges to step aside at age 70."  501 U.S. at 473, 111 S.Ct. at 2408.  Thus, even if age were a significant factor in amending Rule 4,

such consideration in establishing the Court's policy on eligibility to be elected Chief Justice would not violate a clearly established federal right.  In short, the Justices were exercising a discretionary act and were not knowingly violating any clearly established federal law.  They are thus protected by qualified immunity.  *Id.*

### PROPOSITION THREE

### PLAINTIFF OPALA ALSO HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

For the reasons discussed in Proposition One of this Brief, the language of Rule 4, both prior to and after its amendment, both of which were incorporated into Justice Opala's Complaint, controls over Plaintiff's allegations, and those contrary allegations need not be accepted as true when ruling on a motion to dismiss.  Justice Opala's Complaint, considered in light of the contradictory language of Rule 4, fails to state a claim upon which relief can be granted.

Further, Justice Opala has failed to state a claim upon which relief can be granted because of the immunities that protect the Defendants.  His failure to state a claim upon which relief can be granted is further demonstrated below.

### A.    Plaintiff's "Due Process" Claim.

The essence of a claim of denial of "due process," whether substantive or procedural, is the foundation of such a claim upon a deprivation of some "property right."  *Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1110-11 (10th Cir. 2004).  As noted above, Justice Opala enjoyed no property right in the office of Chief Justice.  And, while public employees may have property rights in their employment, *see, Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), such property rights are not created by, nor do they arise from, the

Constitution itself.  Rather, such property rights are creatures of independent sources, such as state laws, which also define their dimensions.  *Id* at 569, 92 S.Ct. at 2705.  *See also, Blanton v. Housing Authority of the City of Norman,* 1990 OK 38, 794 P.2d 412, 414.

Here, Plaintiff does not and could not cite to any "independent source," such as a state law or statute, granting him or creating some property right for him in the office of Chief Justice or priority to be elected.  The only sources relied upon by Justice Opala are the Internal Operating Procedures of the Supreme Court Conference, which do not create a property right.  Thus, Plaintiff has failed to make a "due process" claim, and dismissal is appropriate.

>    **B.    Plaintiff's "Equal Protection" Claim.**

Nothing in the amended version of Rule 4 admits of or establishes "age" as a basis upon which a choice or a classification will be made.  Even if the Rule were premised upon and granted favor based upon age, which it does not, Plaintiff would still fail to state a claim.

Classifications based on age are not "suspect" or special, thus warranting any heightened level of scrutiny or review.  *Kimel v. Florida Board of Regents,* 528 U.S. 62, 83, 120 U.S. 631, 646, 145 L.Ed.2d 522 (2000).  The *Kimel* Court also held that the Age Discrimination in Employment Act did not authorize suit against the States, because Congress was not empowered to abrogate the State's Eleventh Amendment immunity.  528 U.S. at 91, 120 S.Ct. at 650.  In age discrimination cases, the appropriate level of review is the "rational basis test," which affords a strong presumption of constitutionality to the rule or enactment challenged.  *Id.* and *North Dakota v. U.S.*, 495 U.S. 423, 110 S.Ct. 1986, L.Ed.2d 420 (1990); *United States v. Carolene Prods. Co.,* 304 U.S. 144, 152, 58 S.Ct. 778, 82 L.Ed. 1234 (1938).

As pointed out above, the changes to the Rule merely made a sitting Chief Justice eligible for a consecutive term—if elected.  It did not create any new impediments or new

qualifications for those other Justices who were otherwise eligible to be elected Chief Justice at the November 2004 election. Further, under both versions of Rule 4, Plaintiff **had an opportunity to be elected Chief Justice, regardless of his age.** The amended version of Rule 4 is not unconstitutional because it does not draw any impermissible, suspect classifications, and, in any event, it would satisfy any "rational basis" review which the Court might employ. Further, under a "rational basis" review, a party seeking to overturn an enactment under either the equal protection or due process clause has the burden "to negative every conceivable basis which might support it." *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364,93 S.Ct. 1001, 1006, 35 L.Ed.2d 351(1973)(internal quotation marks omitted). States are not required to convince the courts of the correctness of their legislative judgments. Rather, "**those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision-maker.**" *Vance v. Bradley*, 440 U.S. 93, 111,99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979)(emphasis added). Here, even if age were a significant factor in amending Rule 4, the Supreme Court in *Gregory* has already held that consideration of age in dealing with service of older state judges is rationally based because of the general threat of deterioration with age.

<u>**CONCLUSION**</u>

Justice Opala does not have a "federal case" against his colleagues. The very Rules he relies upon show he had no property interest in being elected Chief Justice, and that at the November 2004 election he and four of his colleagues were equally eligible to be nominated and elected. He simply did not win the election. Not only does Justice Opala fail to state a claim upon which relief can be granted, he has also brought his claims against Defendants who are

immune from suit. In short, Justice Opala has no federal claim, and his "federal case" should be dismissed.

Respectfully submitted,

**S/ NEAL LEADER, OBA #5310**
**SENIOR ASSISTANT ATTORNEY GENERAL**
2300 N. Lincoln Boulevard
112 State Capitol Building
Oklahoma City, OK 73105
(405) 522-4393 – Telephone
(405) 521-6246 – Facsimile

**S/STEFAN K. DOUGHTY, OBA #16209**
**ASSISTANT ATTORNEY GENERAL**
4545 N. Lincoln Boulevard, Suite 260
Oklahoma City, OK 73105
(405) 521-4274 – Telephone
(405) 528-1867 – Facsimile

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

X  I hereby certify that on this 24th day of January, 2005, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Stanley M. Ward
Woodrow K. Glass
Scott F. Brockman
WARD & GLASS, LLP
629 24th Ave., S.W.
Norman, OK 73069
*Attorneys for Plaintiff Opala*

S/ NEAL LEADER