IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

**FILED**

MAY 2 0 2005

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____ *ss* _____ DEPUTY

| | |
|---|---|
| MARIAN P. OPALA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIV-04-1771-R |
| | ) |
| JOSEPH M. WATT; | ) |
| JAMES R. WINCHESTER; | ) |
| ROBERT E. LAVENDER; | ) |
| RUDOLPH HARGRAVE; | ) |
| YVONNE KAUGER; | ) |
| JAMES E. EDMONDSON; | ) |
| STEVEN W. TAYLOR; and, | ) |
| TOM COLBERT, in their | ) |
| individual and administrative | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants' Motion to Dismiss. Upon reading the briefs, hearing oral argument, and being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

### Statement of the Parties and Jurisdiction

Plaintiff is and has been a resident of Warr Acres, Oklahoma, at all relevant times. Plaintiff is a member and justice of the Oklahoma Supreme Court.

Defendants Watt, Winchester, and Kauger are residents of the Western District of the United States District Court for the State of Oklahoma. Defendants Watt, Winchester, Lavender, Hargrave, Kauger, Edmondson, Taylor, and Colbert were and are currently

members and justices of the Oklahoma Supreme Court whose principal place of conducting business is Oklahoma City, Oklahoma.

This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201. Plaintiff claims violations of his due process and equal protection rights under the Fourteenth Amendment of the United States Constitution. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 and 2202. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## **Background**

Plaintiff Marian Opala is a member and Justice of the Oklahoma Supreme Court. All Defendants are also members and Justices of the Oklahoma Supreme Court. Plaintiff is presently the Vice-Chief Justice of the Supreme Court. Defendant Watt is presently the Chief Justice.

The Oklahoma Constitution, Article 7, § 2 provides that the Justices shall elect a Chief Justice and a Vice-Chief Justice. The Justices had adopted rules and procedures governing the process for selecting the Chief Justice. The rules are titled "Internal Operating Procedures of the Supreme Court Conference" ("Rules"). Prior to November 4, 2004, the Rules provided:

> The term of office of Chief Justice shall rotate among eligible members of the Court every two years. A Justice is eligible to become Chief Justice when each sitting Justice at the time of the Justice's appointment has completed a term as Chief Justice or waived his or her right to do so. No Justice shall succeed himself or herself as Chief Justice, nor shall a Justice be eligible hereunder until he or she has completed six years service as Justice of this Court.

2

Plaintiff asserts that he was the only Justice eligible to be nominated for the Chief Justice position under the above system. Plaintiff states that, despite the language of the rule, traditionally, upon the expiration of the Chief Justice's term, the Vice-Chief Justice succeeded to the office of Chief Justice without an election.[1]   Plaintiff further alleges that Justice Winchester had informed him that he would become Chief Justice unless the Rules changed.   Thus, Plaintiff asserts that he had a legitimate expectation of becoming the next Chief Justice.

However, prior to electing a new Chief Justice, the Justices are alleged to have enacted a change to the Rules which allowed a Chief Justice to succeed himself.  The Rule as amended states:

> The term of office of Chief Justice shall rotate among eligible members of the Court every two years.  The next senior Justice who has never served as Chief Justice should be considered for election as Chief Justice, provided that the Justice has served at least four (4) years on this Court including service as Vice-Chief Justice.  If the next senior Justice has not served at least four (4) years on the Court including service as Vice-Chief Justice, the incumbent Chief Justice or any other Justice who has served as Chief Justice may be elected to another two-year term as Chief Justice.  Otherwise, the Chief Justice will serve only one term.

Plaintiff states that he was not privy to the discussions which led to this change. According to Plaintiff, the practical effect of this change was to cause Defendant Watt to have the top priority for the position of Chief Justice, while ensuring that it was nearly

---

[1]  Plaintiff alleges additional facts which were not contained in the Complaint.  These facts may be considered by this Court, as the facts are consistent with the allegations and theories contained in the Complaint. "While it might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint, cf. Sterling v. Kazmierczak, 983 F.Supp. 1186, 1189 (N.D. Ill. 1997), a court may not consider allegations or theories that are inconsistent with those pleaded in the complaint." Hayes v. Whitman, 264 F.3d 1017, 1025 (10th Cir. 2001).

impossible for Plaintiff to be elected to this position. Plaintiff asserts that the motivation behind this Rule was to prohibit Plaintiff from being elected as Chief Justice. Plaintiff believes that his age, eighty-three, was a significant factor in the amendment of Rule 4.

Plaintiff alleges that his right to equal protection under the Fifth and Fourteenth Amendments to the United States Constitution has been violated. Plaintiff asserts that he has been deprived of a significant property interest without Due Process of law in violation of the Fourteenth Amendment of the United States Constitution because there has not been a hearing or judicial review of Defendants' actions. Thus, Plaintiff is seeking declaratory judgment pursuant to 28 U.S.C. § 2201. Plaintiff requests that this Court enter a declaratory judgment stating that the amendment constitutes a violation of equal protection and due process and declaring the amendment null and void.

### Standard of Review

Defendants assert that this action should be dismissed for three reasons: (1) Plaintiff's Complaint fails to state a claim for which relief can be granted; (2) this Court lacks jurisdiction because Plaintiff's claims fail to present a "substantial federal question" invoking federal question jurisdiction; and (3) the claims against Defendants are barred by legislative, Eleventh Amendment immunity and qualified immunity. The standards for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) are discussed below.

I.      Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.

The party invoking federal jurisdiction has the burden of proving that by a

preponderance of the evidence, jurisdiction exists. Celli v. Shoell, 40 F.3d 324, 327 (10th

Cir. 1994). A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.

Civ. P. 12(b)(1) may take two forms. When a defendant makes a facial attack on the

complaint's allegations challenging the sufficiency of the complaint, the district court will

accept the allegations in the complaint as true. Holt v. United States, 46 F.3d 1000, 1002

(10th Cir. 1995). If, however, the defendant goes beyond the allegations contained in the

complaint and challenges the facts upon which subject matter jurisdiction depends the district

court "may not presume the truthfulness of the complaint's allegations." Id. at 1003. The

court has wide discretion to allow other documents to be considered to resolve the disputed

jurisdictional facts. Id.

II.     Fed. R. 12(b)(6) Motion to Dismiss for Failure to State a Claim.

A federal district court can only dismiss a cause of action for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6) when it appears beyond a doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle her to relief. Conley v.

Gibson, 355 U.S. 41, 45-46 (1957); Yousef v. Reno, 254 F.3d 1214, 1219 (10th Cir. 2001).

The district court must assume all plaintiff's well-pleaded allegations are true and construe

them liberally in the light most favorable to the plaintiff. Conley, 355 U.S. at 45-46;

Ramirez v. Department of Corrections, Colo., 222 F.3d 1238, 1240 (10th Cir. 2000). The

district court's function on a Rule 12(b)(6) motion is to assess whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted. Sutton

5

v. Utah State Sch. for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). In so

assessing, the district court is not to weigh potential evidence that might be presented or

determine who will ultimately prevail, see id.; rather, the issue is whether the plaintiff is

entitled to offer evidence to support her claim. Scheur v. Rhodes, 416 U.S. 232, 236 (1974).

### Discussion

This case presents a myriad of complex issues, many of which are interrelated.

Defendants assert three types of immunity which may act as a complete bar to this suit.

Defendants further assert that Plaintiff has failed to state a claim for which relief may be

granted because Plaintiff's due process and equal protection rights have not been violated.

Defendants also contend that Plaintiff's claims fail to present a substantial federal question

which invokes this Court's jurisdiction.

This Court will first discuss the applicability of Eleventh Amendment immunity to the

present case, as this issue is dispositive. Eleventh Amendment immunity is a challenge to

the subject matter jurisdiction of the district court and must be resolved before a court may

address the merits of a claim. Frazier v. Simmons, 254 F.3d 1247, 1252 (10th Cir. 2001);

Fent v. Oklahoma Water Resources Bd., 235 F.3d 553, 558 (10th Cir. 2000); Martin v.

Kansas, 190 F.3d 1120, 1126 (10th Cir. 1999). The Court will next address whether

Defendants are immune from suit due to absolute or qualified immunity. Third, the Court

will discuss whether, based upon the language of the Complaint, Plaintiff has failed to state

a claim for which relief may be granted. This discussion will determine, in part, the outcome

6

of Defendants' argument that Plaintiff has failed to present a substantial federal question.

Thus, this issue will be discussed in the final section of this Order.

I.      Whether the Claims Against Defendants Are Barred by Absolute Immunity, Eleventh
        Amendment Immunity and Qualified Immunity.

        A.      The Eleventh Amendment.

The Eleventh Amendment provides that "[t]he judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State." U.S. Const. amend XI. The United States Supreme Court has consistently

interpreted the Eleventh Amendment as barring not only suits against a state by citizens of

another state, but also suits against a state by that state's own citizens. See Hans v. Louisiana,

134 U.S. 1, 13-15 (1890); Edelman v. Jordan, 415 U.S. 651, 663 (1974); ANR Pipeline Co.

v. Lafaver, 150 F.3d 1178, 1187-89 (10th Cir. 1998).  Furthermore, the Supreme Court has

interpreted the Eleventh Amendment to embody the principle of sovereign immunity. Hans,

134 U.S. at 10, 20; Alden v. Maine, 527 U.S. 760, 722 (1999).  " 'It is inherent in the nature

of sovereignty not to be amenable to the suit of an individual *without its consent.*' " Hans, 134

U.S. at 13 (emphasis in original) (quoting The Federalist, No. 81 (A. Hamilton)).  Moreover,

the Eleventh Amendment, and the principle of sovereign immunity that it embodies, bars a

suit brought against state officials when the state is the real, substantial party in interest.[2] Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984).

However, Eleventh Amendment immunity is not absolute. See Estes v. Wyo. DOT, 302 F.3d 1200, 1201 (10th Cir. 2002). The Tenth Circuit has explained that there are "two clearly recognized exceptions to the general immunity protections of the Eleventh Amendment: (1) a state may consent to be sued, or (2) Congress may clearly and expressly abrogate the states' immunity." Elephant Butte Irrigation Dist. of New Mexico v. D.O.I., 160 F.3d 602, 607 (10th Cir. 1998).

In the present case, neither of the above exceptions apply. However, a plaintiff may obtain relief against a state under the *Ex parte Young* doctrine notwithstanding a state's sovereign immunity. ANR Pipeline Co., 150 F.3d at 1188. The landmark case of *Ex parte Young* created a third exception to Eleventh Amendment immunity by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State. Ex parte Young, 209 U.S. 123, 159-60 (1908). The general rule that sovereign immunity creates an absolute bar to suit is not applicable if an individual is creating or enforcing an unconstitutional act. The rationale behind the *Ex Parte Young* doctrine is that if the underlying act is unconstitutional, and thus void, enforcement of that

---

[2] Plaintiff asserts that Eleventh Amendment immunity is not applicable in the present case because he has sued Defendants in their individual capacities rather than their official capacities. Plaintiff's Brief in Response and Objection to Defendants' Motion to Dismiss, pp. 21-24. However, Plaintiff's Complaint states that he is suing Defendants in their "individual and administrative capacities." Complaint, p. 1. This Court believes that suing Defendants in their administrative capacity is synonymous with suing Defendants in their official capacity. Thus, this Court must discuss sovereign immunity to determine whether Plaintiff may proceed with this suit.

act is not authorized and is not taken in an official capacity. Additionally, the United States Supreme Court has explained that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985). Thus, "when a party seeks only prospective equitable relief–as opposed to any form of money damages or other legal relief–then the Eleventh Amendment generally does not stand as a bar to the exercise of the judicial power of the United States." ANR Pipeline Co., 150 F.3d at 1188 (citing Ex parte Young, 209 U.S. at 158-59).

As noted above, sovereign immunity bars a suit brought against state officials when the state is the real, substantial party in interest. Pennhurst, 465 U.S. at 101. Whether the state is the real party in interest turns on the type of relief sought by the plaintiff. Powder River Basin Resource Council v. Babbit, 54 F.3d 1477, 1483 (10th Cir. 1995). A suit that seeks retroactive relief is barred because in such instances the State, as opposed to the named official, is the real, substantial party in interest. Id. A suit that seeks prospective relief, however, is permitted because such a suit is against the official rather than against the sovereign state. Id.

The *Ex parte Young* doctrine has several limitations. The Tenth Circuit summarized the limitations on the scope of the *Ex parte Young* doctrine as follows:

> Federal courts lack jurisdiction over suits that seek: (1) to require the state official to comply with state law; (2) to redress past wrongs, rather than ongoing violations; (3) a declaratory judgment from the federal court when the only purpose for such a judgment is its "res judicata effect in a subsequent

state-court proceeding;" (4) "an award for monetary relief that is the practical equivalent of money damages, even if this relief is characterized as equitable." *Id.* at 1188-89. In addition, *Ex parte Young* "should not be invoked when Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right," or the requested relief "implicates special sovereignty interests."

Frazier v. Simmons, 254 F.3d 1247, 1253 n. 2 (10th Cir. 2001) (quoting ANR Pipeline, 150 F.3d at 188-90) (quotation marks and citations omitted).   In the present case, Defendants assert that the *Ex parte Young* exception does not apply because  Plaintiff has not sought prospective injunctive relief.  In assessing Defendants' contention, this Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)  (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).   Thus, the primary issue this Court must address is whether the relief sought by Plaintiff will redress past wrongs or will address an ongoing violation of the United States Constitution or federal law.

Plaintiff requests that this Court enter a declaratory judgment declaring that the amendment of Rule 4: (1) constitutes a violation of Plaintiff's right to equal protection pursuant to the Fifth and Fourteenth Amendments to the United States Constitution; (2) constitutes a substantial deprivation of Plaintiff's property without due process of law in violation of the Fourteenth Amendment of the United States Constitution; (3) violated due

process of law under the Fourteenth Amendment of the United States Constitution because it does not provide for any adequate and immediate post-deprivation hearing on Plaintiff's preclusion from eligibility to be nominated for the position of Chief Justice; (4) constitutes a substantial deprivation of Plaintiff's liberty interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution. Plaintiff further requests that the amendment to Rule 4 declared to be null and void, of no effect, and unauthorized by law.

Clearly, Plaintiff has not requested retroactive money damages from the state, which are prohibited by the Eleventh Amendment and do not fall within the *Ex parte Young* exception. Edelman v. Jordan, 415 U.S. 651, 663 (1974); Green v. Mansour, 474 U.S. 64, 68 (1985); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02 (1984); Quern v. Jordan, 440 U.S. 332, 341 (1979). The only monetary damages sought are attorney fees, which are not prohibited by the Eleventh Amendment. See Hutto v. Finney, 437 U.S. 678, 692 (1978) ("Hence, the substantive protections of the Eleventh Amendment do not prevent an award of attorney's fees against the Department's officers in their official capacities.")

Thus, we must determine whether the relief requested by Plaintiff is retroactive or prospective in nature. "Declaratory judgments are construed as retroactive relief only when '[t]here is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction.' Declaratory relief is prospective when sought to prevent a state's current

11

violation of the law." <u>Powder River Basin</u>, 54 F.3d at 1483 (quoting <u>Green v. Mansour</u>, 474 U.S. 64, 73 (1985)).

Defendants contend that the relief requested by Plaintiff is retroactive because he has asked that the amended Rule be declared null and void. Defendants state that this relief would retroactively undo the November 2004 election of Justice Watt, because he was made eligible by the amended Rule. Defendants' Motion to Dismiss, p. 19. However, even if a portion of the relief requested would have retroactive effect, this suit is not barred if the relief would also end an ongoing violation of Plaintiff's constitutional rights. Plaintiff claims that his equal protection and due process rights were violated and continue to be violated. Plaintiff has not requested that this Court appoint him to the position of Chief Justice. Rather, Plaintiff has requested that this Court declare Rule 4, as amended, null and void because the rule continues to infringe on his constitutional rights. Thus, this Court believes that Plaintiff has asserted a continuing violation of federal law.

Other cases have presented similar situations in which a plaintiff seeks to "right" a previous wrong. In such cases, it is often asserted that the plaintiff is seeking retroactive relief, which cannot be obtained under *Ex parte Young*. However, until a violation has been corrected, the "wrong" continues, and any relief sought encompasses an ongoing violation of federal or constitutional law. For example, in <u>Powder River Basin</u>, <u>supra</u>, the Tenth Circuit determined that a request for declaratory judgment that a Wyoming statute was a continuing violation of the Surface Mining Control and Reclamation Act ("SMCRA") did

not seek retroactive relief barred by Eleventh Amendment. <u>Powder River Basin</u>, 54 F.3d at 1483. The Tenth Circuit stated:

> Plaintiff alleged in its complaint that Wyoming's attorney's fees provision violated federal SMCRA law. At the time plaintiff brought suit, the allegedly deficient attorney's fees statute was still in effect. Wyo. Stat. § 35-11- 437(f) (1988). Thus, plaintiff alleged a continuing violation of SMCRA. Because plaintiff's request sought prospective, as opposed to retroactive, relief, the claim was not barred by the Eleventh Amendment.

<u>Id.</u> Similarly, in the present case, Plaintiff asserts that Rule 4, as amended, violates federal law. This amended version is still in effect, and thus, Plaintiff asserts a continuing violation of federal law.

Defendants also assert that Plaintiff has not claimed that Defendants, in amending Rule 4, were acting under an unconstitutional statute; thus, the *Ex parte Young* exception does not apply. Defendants are correct that the power granting the Oklahoma Supreme Court to create rules regarding the selection of Chief Justice is not unconstitutional.[3] However, Defendants used this power to create a potentially unconstitutional rule. The policy of *Ex parte Young* is not to shield the creation of unconstitutional rules so long as they are created pursuant to a constitutional statute. Furthermore, once Defendants amended Rule 4, if unconstitutional, any action pursuant to this Rule places them squarely within the *Ex parte Young* exception.

Finally, Defendants claim that the *Ex parte Young* exception is not applicable when

---

[3] The Oklahoma Supreme Court derives its authority to choose a Chief Justice from the Oklahoma Constitution, Article 7, Sec. 2.

the action sought to be enjoined requires the exercise of discretion, in which Defendants were

engaged.  This argument has previously been addressed by the Tenth Circuit.  In Elephant

Butte Irr. Dist. of New Mexico v. Department of Interior, the Tenth Circuit rejected this

argument, stating:

> The state officials also argue the *Ex parte Young* doctrine does not allow the
> courts to interfere with their discretionary acts. Although this general premise
> is sound, *Ex parte Young* does not extend this rule to preclude judicial review
> of discretionary acts that violate federal law. See 209 U.S. at 158-59, 28 S.Ct.
> 441 (holding the state officials' "general discretion regarding the enforcement
> of the laws ... is not interfered with by an injunction which restrains the state
> officer from taking any steps towards the enforcement of an unconstitutional
> enactment, to the injury of the complainant.").

Elephant Butte Irr. Dist. of New Mexico v. Department of Interior, 160 F.3d 602, 611 (10th

Cir. 1998). See also Lewis v. New Mexico Dept. of Health, 261 F.3d 970, 977 (10th Cir. 2001).

Thus, the type of relief sought is proper.  Plaintiff has not requested retroactive

monetary damages.  Plaintiff has requested a declaratory judgment asserting that there is an

ongoing violation of federal law.  As noted above, Plaintiff maintains that this suit was

brought against Defendants in their individual capacity only.  This Court previously stated

that by asserting a claim against Defendants in their "individual and administrative

capacities", we believe that Plaintiff did, in fact, assert a claim against Defendants in their

official capacities.  However, Eleventh Amendment immunity will not shield Defendants

from this suit.  This Court **FINDS** that *if* Rule 4, as amended, infringed upon Plaintiff's

constitutional rights, Defendants are not entitled to Eleventh Amendment immunity.  Instead,

14

this case would fall squarely within the *Ex parte Young* exception to Eleventh Amendment immunity.  Of course, this Court cannot definitively state at this time whether Defendants' actions violated Plaintiff's constitutional rights.  However, "[t]he function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d. Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980)).  See also Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).  Furthermore, "inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."  Verizon, 535 U.S. at 646.  Thus, for the foregoing reasons, Defendants' Motion to Dismiss based upon Eleventh Amendment Immunity is **DENIED**.

B.     Absolute Immunity

"Judges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction." Henriksen v. Bentley, 644 F.2d 852, 855 (10th Cir.1981) (citing Stump v. Sparkman, 435 U.S. 349 (1978)).  "'[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.'" Valdez v. City and County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1989) (quoting Forrester v. White, 484 U.S. 219, 227 (1988)). Consequently, "[i]mmunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved." Henriksen, 644 F.2d at

15

855.

Similarly, judges may enjoy absolute immunity for acts which are not judicial in

nature.  In <u>Forrester v. White</u>, the United States Supreme Court stated:

> Difficulties have arisen primarily in attempting to draw the line between truly
> judicial acts, for which immunity is appropriate, and acts that simply happen
> to have been done by judges. Here, as in other contexts, immunity is justified
> and defined by the *functions* it protects and serves, not by the person to whom
> it attaches.

<u>Forrester v. White</u>, 484 U.S. at 227 (emphasis in original).

In the present case, the Court will for purposes of this argument assume that

Defendants were not performing a judicial function in amending Rule 4.[4]  Defendants assert

that they were acting in a legislative capacity in amending Rule 4, while Plaintiff asserts that

Defendants acted in an administrative capacity.  The parties believe the distinction is

dispositive.  There is no doubt that judges are not entitled to absolute immunity when acting

in an administrative capacity.  <u>Id.</u> at 229; <u>Clinton v. Jones</u>, 520 U.S. 681, 694-95 (1997).

Whether a judge is entitled to immunity when performing a legislative function has been the

subject of great debate since the Supreme Court's ruling in <u>Supreme Court of Virginia v.</u>

<u>Consumers Union of U. S., Inc.</u>, 446 U.S. 719 (1980).  In <u>Consumers Union</u>, the Supreme

Court held that "absolute immunity derived from the doctrine of legislative immunity applies

---

[4] While the Court in this opinion will follow the precedents that establish that the function involved herein
is either legislative or administrative, the Court is also aware that it could be urged that when the Justices of the
Supreme Court of Oklahoma provide a rule for electing Chief Justice, and then do so, they are performing acts
mandated by the Oklahoma Constitution, which are therefore acts of judges that are by definition judicial.

16

to insulate state judges from damages liability arising from court rule-making activities."
Galahad v. Weinshienk, 555 F. Supp. 1201, 1204-05 (D.C. Colo. 1983) (citing Consumers
Union, 446 U.S. at 731-34).  It is clear that said immunity applies to claims for monetary
damages.  However, whether legislative immunity should be applied to prospective or
injunctive relief has been a point of contention.  Fourteen years after the Consumers Union
decision, the Third Circuit described this issue as follows:

> We note that the Supreme Court has never held that legislative immunity
> applies to both claims for damages and injunctive relief. A close reading of
> Consumers Union indicates that the Supreme Court merely pointed to an
> obvious circuit split which existed at the time and, we believe, remains
> unresolved today. There are at least two courts of appeals that have suggested
> that the Supreme Court has definitively spoken on this issue and has held that
> absolute immunity is a bar to injunctive relief. See Risser v. Thompson, 930
> F.2d 549, 551 (7th Cir.), cert. denied, 502 U.S. 860, 112 S.Ct. 180, 116
> L.Ed.2d 142 (1991); Alia v. Michigan Supreme Court, 906 F.2d 1100, 1102
> (6th Cir. 1990). However, a substantial number of courts of appeals, including
> the Third Circuit, believe the issue is unresolved by the Supreme Court, and
> have held that absolute immunity is a bar to damages only, and not to
> prospective or injunctive relief. See Schrob II, 967 F.2d at 939; Fry v.
> Melaragno, 939 F.2d 832, 839 (9th Cir. 1991); Chrissy F. v. Mississippi Dep't
> of Public Welfare, 925 F.2d 844, 849 (5th Cir. 1991), cert. denied, 510 U.S.
> 1214, 114 S.Ct. 1336, 127 L.Ed.2d 684 (1994); Executive 100, Inc. v. Martin
> County, 922 F.2d 1536, 1539 (11th Cir.), cert. denied, 502 U.S. 810, 112 S.Ct.
> 55, 116 L.Ed.2d 32 (1991); Schloss v. Bouse, 876 F.2d 287, 292 (2nd Cir.
> 1989).

Acierno v. Cloutier, 40 F.3d 597, 608 (3rd Cir. 1994).

In reviewing Tenth Circuit decisions, this Court believes that the Tenth Circuit has
indicated its intention to extend legislative immunity to the present situation.  In Fry v. Board
of County Com'rs of County of Baca, State of Colo., 7 F.3d 936, 937 (10th Cir. 1993), the

plaintiffs claimed the right to damages and injunctive relief under 42 U.S.C. § 1983.[5]  The district court had granted summary judgment for defendants, finding that they were entitled to absolute legislative immunity.  The Tenth Circuit held that legislative immunity was absolute, and thus, summary judgment was appropriate.  Id. at 942.  Although the Fry court did not specifically address whether legislative immunity applied to declaratory or injunctive relief, we may infer that the Tenth Circuit intends it to be so, as it upheld the granting of summary judgment as to *both* the claim for damages *and* the claim for injunctive relief.  Thus, this Court believes that when performing a legislative function, a judge is entitled to absolute immunity.

Therefore, the Court cannot escape determining whether Defendants' actions were legislative or administrative in nature.

As noted above, the Supreme Court has stated that it applies a "functional" approach to determine immunity questions.   Forrester, 484 U.S. at 224.  "Under that approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions."  Id.

Defendants were engaged in rulemaking when the alleged discriminatory action

---

[5]  The Court notes that the present case is not factually similar to the issue in Fry.  Furthermore, as Plaintiff has stated, Plaintiff has not brought this action pursuant to § 1983, as did the plaintiffs in Fry.  However, the relevant inquiry is whether the Tenth Circuit would extend legislative immunity to situations in which declaratory or injunctive relief is sought.  The Court believes this question is answered in Fry.

occurred. Defendants argue that the <u>Consumers Union</u> decision, <u>supra</u>, requires this Court to find that the adoption of rules is a legislative function, and therefore, Defendants are protected by legislative immunity. Defendants' Motion to Dismiss, p. 14. In <u>Consumers Union</u>, the Virginia Supreme Court had promulgated disciplinary rules for the Virginia Code of Professional Responsibility. <u>Consumers Union</u>, 446 U.S. at 721. This is not similar to the case at hand because the rules enacted in <u>Consumers Union</u> had a widespread impact affecting anyone who practiced law in Virginia. Defendants also cite two other cases in which persons who had enacted rules or ordinances were entitled to legislative immunity.[6] Generally, these cases are more similar to the present case as the immediate impact of the act was limited to one individual. See <u>Aitchison v. Raffiani</u>, 708 F.2d 96 (3rd Cir. 1983) (mayor and borough attorney entitled to legislative immunity when ordinance passed eliminated plaintiff's job position); <u>Bogan v. Scott-Harris</u>, 523 U.S. 44 (1988) (mayor who proposed ordinance terminating a division in which plaintiff was the sole employee was entitled to legislative immunity). In these cases, it was significant to the courts that the actions had "prospective implications that reach well beyond the particular occupant of the office." <u>Bogan</u>, 523 U.S. at 56.

We believe that the actions in those cases involved decisions which the individual actor did in the ordinary course of business. For example, in <u>Bogan</u>, <u>supra</u>, the mayor, Daniel

---

[6] Additionally, Defendants cite two cases which are similar to the <u>Consumers Union</u> case as the cases involve legislative immunity as applied to Justices' who adopted rules or issued an Order with a widespread impact. The Court need not discuss these cases, as we have already stated that this type of broad issuance is not present in the case before this Court.

mayor, Daniel Bogan, had proposed the elimination of several employees, including plaintiff, as part of his budget proposal.  Bogan, 523 U.S. at 47.  Bogan, as the elected mayor, was required to submit a budget proposal.  Thus, it was clear that legislative immunity should apply in such a case since the "purpose of [legislative] immunity is to insure that the legislative function may be performed independently without fear of outside interference." Consumers Union, 446 U.S. at 731.

"[A]t its core, the legislative function involves determining, formulating, and making policy." Kamplain v. Curry County Bd. of Com'rs, 159 F.3d 1248, 1251 (10th Cir. 1998). As further support for their contention that they should be granted legislative immunity, Defendants contend that matters addressed by Rule 4, such as the length of the Chief Justice's term and eligibility determinations, are policy issues.  To the contrary, it can be argued that Defendants were engaged in internal rulemaking - the sole effect of which would impact the nine current members of the Oklahoma Supreme Court.[7]

The amended rule, if retained, will arguably affect future members of the Oklahoma Supreme Court as well.  Nonetheless, the Court believes that the stated purpose of legislative immunity does not apply in this situation.  Nor is this a situation in which policy is at issue. In Kamplain, supra, the Curry County Board of Commissioners ("Board") voted to ban Mr.

---

[7]  Defendants correctly note that the selection of Chief Justice may impact parties outside of the Oklahoma Supreme Court.  Defendants' Response to Plaintiff's Amended Supplemental Brief, p. 2.  However, while the selection may impact the public, it cannot truly be said that the rule itself has a substantial impact on the public. Defendants argue that under Rule 4, four Justices were eligible for the selection of Chief Justice, whereas under Rule 4 as amended, five Justices were eligible for the selection of Chief Justice.  The addition of one Justice from which the other Justices may choose Chief Justice likely has very little impact on the public.

Kamplain from future meetings. The Court held that since "the circumstances of this case did not concern the enactment or promulgation of public policy", the ban was not related to any legislation or legislative function. Id. at 1253. Legislative immunity was not appropriate because the Board members were not "voting on, speaking on, or investigating a legislative issue." Id. The Tenth Circuit held that, although the Board acted during a regularly scheduled meeting, the acts were of an administrative nature. Id.

In Forrester, supra, the Supreme Court held that absolute immunity would not be afforded a judge who demoted and discharged an employee in violation of 42 U.S.C. § 1983. Forrester v. White, 484 U.S. at 229. Clearly, this is not similar to the case at hand, in which Defendants did not terminate Plaintiff, but rather amended an existing rule, the effect of which is undetermined. However, the characterization of such issues is enlightening. The Supreme Court stated "[Employment] decisions, like personnel decisions made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under § 1983." Id. This too is a personnel decision and suggests that legislative immunity would not arise in the present situation, which involves the amendment of a rule governing internal procedures. It is also consistent with the Oklahoma Statute which excludes "statements and memoranda concerning only the internal management of an agency and not affecting private rights or procedures available to the public" from the definition of "rule". 75 Okla. Stat. Tit. 20, § 250.3(15)(c) (2002).

21

Again, this Court notes that none of the above examples fits squarely within the present issue. Had this exact issue been previously litigated and determined, this case might not be before this Court. Recognizing this fact, we are forced to determine whether this action was legislative or administrative based upon the reasoning in analogous cases. A review of the history and policy behind legislative immunity has enabled us to reach the conclusion that Plaintiff's argument is persuasive. The adoption and amendment of Rule 4 is not subject to outside interference by the public. Rather, the rules, as Plaintiff notes, "are simply house-keeping rules, designed to facilitate the orderly internal management of the Supreme Court . . . . The promulgation and amendment of Rule 4 does not arise out of a need to regulate conduct for the protection of all citizens." Plaintiff's Brief in Response and Objection to Defendants' Motion to Dismiss, p. 19. This is not a situation in which the Justices' actions should be protected out of fear that a lack of immunity will undermine the integrity of the Oklahoma Supreme Court. It is a situation, however, which warrants a remedy if the amendment of Rule 4 was undertaken for the purposes Plaintiff describes.

As the <u>Forrester</u> court noted, the Supreme Court "has been careful not to extend the scope of the protection [of legislative immunity] further than its purposes require." <u>Forrester</u>, 484 U.S. at 224. We decline to extend that doctrine to the present case. Thus, for the foregoing reasons, Defendants' Motion to Dismiss based upon Absolute Immunity is **DENIED**.

C.    <u>Qualified Immunity</u>

The doctrine of qualified immunity "is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995) (internal quotation marks and citations omitted). "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

However, there are some situations, such as this one, in which qualified immunity simply does not apply. Qualified immunity does not apply to claims which solely seek equitable relief, i.e. declaratory and injunctive relief. See Kikumura v. Hurley, 242 F.3d 950, 962-63 (10th Cir. 2001) (qualified immunity did not apply where the primary relief sought was a permanent injunction); Cannon v. City and County of Denver, 998 F.2d 867, 876 (10th Cir. 1993) ("Unlike the claim for money damages, there is no qualified immunity to shield the defendants from claims for [declaratory and injunctive] relief."); Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 527 (9th Cir. 1989) (qualified immunity does not bar actions for declaratory or injunctive relief).

In oral arguments, Defendants conceded that the above cases stand for the proposition that qualified immunity does not apply if the sole relief sought is an equitable remedy. However, Defendants assert that the above cases ultimately relied on Harlow v. Fitzgerald,

supra, in which the defendants were federal, not state, officials.[8]  Accordingly, the Supreme

Court did not have to contend with the issue of Eleventh Amendment immunity since the

actors were federal officials.  Since this case involves state officials, Defendants argue the

result is an overlap of immunities in which qualified immunity becomes intertwined with

Eleventh Amendment immunity.  However, the basis for this argument is Defendants' belief

that Plaintiff solely requests retroactive relief, which is barred by the Eleventh Amendment.

We have previously determined that Plaintiff has requested a declaratory judgment asserting

that there is an ongoing violation of federal law; therefore, Eleventh Amendment immunity

does not bar this action.  Thus, the overlap of immunities is not an issue.

It is clear that Plaintiff does not seek monetary damages.  Qualified immunity does

not bar actions for equitable relief, which is the type of relief sought by Plaintiff.  Therefore,

Defendants' Motion to Dismiss based upon Qualified Immunity is **DENIED**.

II.    Whether Plaintiff's Claims Fail to Present a "Substantial Federal Question" Invoking
       Federal Question Jurisdiction.

Defendants' argument that Plaintiff has failed to present a claim involving a

substantial federal question is based primarily upon the assertion that the language of Rule

4 contradicts the allegations of the Complaint.  Defendants assert that the language of Rule

---

[8]  It is unclear whether Defendants are arguing that the Tenth Circuit's reliance on Harlow v. Fitzgerald and Presbyterian Church (U.S.A.) v. United States was misplaced or whether Plaintiff's interpretation of this case law is erroneous.  Cannon v. City and County of Denver, the Tenth Circuit case which stated that qualified immunity does not apply to actions for equitable relief, involved two police officers employed by the Police Department of the City and County of Denver.  Cannon, 998 F.2d at 869.  Obviously, the Tenth Circuit has determined that the bar to qualified immunity applies to both state and federal employees.

4 is controlling; thus, this case should be dismissed because on its face, Rule 4 does not

violate either due process or equal protection.  This issue will be discussed in this section.

The issue of whether Plaintiff's claims of equal protection and due process violations should

be dismissed will be addressed in the next section.

A motion to dismiss requires the court to assume plaintiff's allegations are true and

construe them liberally in the light most favorable to the plaintiff.  Conley v. Gibson, 355

U.S. 41, 45-46 (1957).  Generally, however, an exception to this rule exists if the allegations

contained in the Complaint are contradicted by documents made part of the Complaint.  In

that situation, the documents control, and the Court need not accept the contradicted

allegations as true.  Sazerac Co., Inc. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).

Defendants cite several cases in support of this general rule.  See Olpin v. Ideal Nat'l Ins.

Co., 419 F.2d 1250, 1255 (10th Cir. 1969); Zeligson v. Hartman-Blair, 126 F.2d 595, 596

(10th Cir. 1942); Fayetteville Investors v. Commercial Buildings Inc., 936 F.2d 1462, 1465

(4th Cir. 1991); Ott v. Home Savings and Loan Ass'n., 265 F.2d 643, 648, n. 1 (9th Cir.

1958); Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); Scott v.

Performance Contractors, Inc., 166 F.R.D. 372, 374 (M.D. La. 1996); Sazerac, 861 F. Supp.

at 257.

These cases are distinguishable from the present case.  Olpin, Zeligson, Fayetteville

Investors, Ott, and Sazerac involved a contract or agreement in which an interested party

attempted to enforce the contract.  In Matusovsky, the document at issue was a release signed

by the plaintiff in which he released the defendants from all claims that had arisen prior to September 22, 2000, the date of the release. Matusovsky,186 F. Supp. 2d at 399. This is similar to the cases above, in which the parties voluntarily entered into a contract. In Scott, the attached document was an EEOC charge claiming a Title VII violation. Scott, 166 F.R.D. at 373. In Scott, the plaintiff stated that she complied with the requirement that her complaint must be filed within 180 days of the date of the EEOC charge. Id. at 374. The date on the EEOC document clearly contradicted this assertion. Id.

The distinguishing characteristic of each of the above documents is that the clear language of the documents governed the claims at issue. If the language of a contract is clear on its face, a contract dispute can easily be disposed of by examining the contract itself. In those cases, the documents prevailed because the language governing the agreement between the parties was clear. Similarly, the language of a release giving up all claims that occurred prior to the date of the release could immediately determine whether the action before the court was barred by the release. Finally, when the date of an EEOC charge clearly indicated that the plaintiff's complaint was not filed within the proper period, it is obvious that the court need only look to the EEOC charge rather than the contradictory allegations set forth in the complaint.

In this situation, however, Plaintiff has not contended that the language of either

version of Rule 4 governs the way in which the Chief Justice is selected.[9]  In fact,  Plaintiff contends that the requirements of Rule 4 were never actually followed.   According to Plaintiff, the Justices did not vote on the successor, as required by Rule 4.  Instead, the Vice Chief Justice simply succeeded to the position if he or she chose to do so.  As support for this contention, Plaintiff notes that nearly every Vice Chief Justice since 1960 has succeeded to the position of Chief Justice.[10]   Defendants argue that the history is irrelevant since Rule 4 did not take effect until 1999.  This Court, however, believes that the history has a great deal of relevance as it clearly establishes that from 1960 to 1999, the time at which Rule 4 was enacted, the Oklahoma Supreme Court consistently allowed the Vice Chief Justice to succeed to the Chief Justice position.  If that history had changed upon the adoption of Rule 4, the history may be irrelevant.  However, even after the adoption of Rule 4, which required the election of Chief Justice according to certain standards, the pattern of succession remained the same.  If Plaintiff's allegations are true, then the construction of Rule 4 is meaningless because Rule 4 was not followed. This also renders Defendants' arguments regarding the eligibility of several Justices under either version of the Rule meaningless.

---

[9] Plaintiff contends that "the Justices of the Supreme Court never held a democratic vote for Chief Justice among those literally eligible for the office."  Plaintiff's Brief in Response and Objection to Defendants' Motion to Dismiss, p. 9.  The language of Rule 4 is irrelevant if no "election" ever occurred, as required by the Rule, because the Vice Chief Justice simply rose to the level of Chief Justice upon the expiration of the Chief Justice's term.  The language of Rule 4 as amended, however, ultimately allows the Chief Justice to succeed himself.  Similarly, if no vote is held, the language of amended Rule 4 is irrelevant except that instead of allowing the Vice Chief Justice to automatically succeed to the Chief Justice position, it allows the current Chief Justice to remain in the position.

[10]  Justice Lavender was the only Justice who did not become Chief Justice after holding the Vice Chief Justice position from 1994-1996.

Thus, we have a situation which requires us to determine whether the document controls in a situation in which the document, i.e. Rule 4, was allegedly not followed in practice. The Court believes that in this type of situation, granting dismissal based solely upon the language of the Rule is not appropriate since it is unknown whether the voting requirements of Rule 4 were actually followed. At this point, we are simply unable to ascertain the real effect of Rule 4 in its original form or as amended. The issue before this Court cannot be disposed of by merely reviewing the language of Rule 4. The Court is unwilling to dismiss this case when so many important facts remain unknown. Thus, dismissal is not appropriate at this time. Accordingly, Defendants' Motion to Dismiss based upon the Failure to Present a "Substantial Federal Question" Invoking Federal Question Jurisdiction is **DENIED**.

III.    <u>Whether Plaintiff's Complaint Fails to State a Claim for Which Relief Can Be Granted.</u>

Defendants contend that Plaintiff can assert neither a claim for violation of due process nor a claim for violation of equal protection. The majority of Defendants' argument is based upon the contentions previously disposed of by the Court. The remainder of these arguments are addressed in turn.

A.    <u>Due Process.</u>

"To determine whether an individual was denied procedural due process, 'courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the

due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'" Hatfield v. Board of County Comm'rs, 52 F.3d 858, 862 (10th Cir. 1995) (quoting Farthing v. City of Shawnee, 39 F.3d 1131, 1135 (10th Cir. 1994)). The plaintiff must demonstrate that he had a protected property or liberty interest. Watson v. University of Utah Medical Center, 75 F.3d 569, 577-78 (10th Cir. 1996). "Protected property interests arise, not from the Constitution, but from state statutes, regulations, city ordinances, and express or implied contracts." Dill v. City of Edmond, Okl., 155 F.3d 1193, 1206 (10th Cir. 1998) (citing Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 536 (10th Cir. 1995)). "A person's interest in a benefit is a property interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." Perry v. Sindermann, 408 U.S. 593, 601 (1972) (internal quotation omitted).

Plaintiff asserts that he had a legitimate claim of entitlement to the Chief Justice position under the old version of Rule 4 because traditionally, no democratic vote actually occurred, which allowed the Vice Chief Justice to succeed to the Chief Justice position if he or she chose to do so. As stated previously, it is presently impossible to ascertain the effect of Rule 4 or its amendment. However, if Plaintiff's contentions are correct, it is possible that a "mutually explicit understanding" regarding the succession of Vice Chief Justice to the Chief Justice position could give rise to a property interest. Since we cannot definitively state at this time whether Plaintiff had a property interest in the Chief Justice position,

dismissal is not appropriate.

B.    Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). Generally, the Equal Protection Clause is applied to claims of class-based discrimination.  Campbell v. Buckley, 203 F.3d 738, 747 (10th Cir. 2002).  In the present case, Defendants correctly note that the language of Rule 4, as amended, does not establish any type of classification which would prevent Plaintiff from becoming Chief Justice.  Additionally, the evidence currently before this Court does not suggest that any broad classification, such as age, was the motivation behind the amendment to Rule 4.

However, a successful equal protection claim may be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).  Thus, a plaintiff need not allege he is part of a suspect class or implicate a fundamental right to state a claim under the Equal Protection Clause.  See Bartell v. Aurora Public Schools, 263 F.3d 1143, 1149 (10th Cir. 2001).  However, Plaintiff still must prove that he was singled out for persecution due to some animosity by the Justices.  Id.  Plaintiff must show that the action

taken by the Justices was a "'spiteful effort to "get" [him] for reasons wholly unrelated to any legitimate state objective.'"  Id.  (quoting Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995)).  Plaintiff must also demonstrate that he was treated differently than others similarly situated.  Id.

Plaintiff asserts that the amendment to Rule 4 was created for the sole purpose of preventing him from succeeding to the Chief Justice position upon the termination of Chief Justice Watt's term.  As noted above, until the effect of Rule 4 prior to its amendment and Rule 4 as amended can be determined, it is not possible to determine whether Plaintiff's allegations have merit.  Therefore, Defendants' Motion to Dismiss based upon the Failure to State a Claim for Which Relief Can Be Granted is **DENIED**.

## Conclusion

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss is **DENIED**.

As the foregoing discussion indicates, discovery will have to occur and then at least some of these arguments will be reasserted by way of summary judgment motion.  The issues of whether or not there was an actual vote upon the rule change and an actual election seem to require explanation.  For that reason, the Court will allow the parties to engage in discovery for a period of ninety (90) days from this date.  Meanwhile, Defendants shall answer Plaintiff's Complaint within twenty (20) days.  Defendants may file their motion for summary judgment, with accompanying brief on or before August 28, 2005 and Plaintiff may

31

respond thereto, with his brief, twenty (20) days thereafter.  The Court will then set the matter for hearing.

Dated this _20th_ day of May, 2005.

CLARENCE A. BRIMMER
UNITED STATES DISTRICT COURT JUDGE